IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI

| | | |
|---|---|---|
| SCOTT JACOBY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No.:   19-cv-00447-DGK |
| | ) | |
| FRANK WHITE, JR., | ) | |
| | ) | |
| V. EDWIN STOLL, | ) | |
| | ) | |
| MARK TROSEN, | ) | |
| | ) | |
| DENNIS DUMOVICH, | ) | |
| | ) | |
| WHITNEY MILLER, | ) | |
| | ) | |
| and | ) | |
| | ) | |
| JACKSON COUNTY, MISSOURI, | ) | |
| | ) | |
| Defendants. | ) | |

**ANSWER TO PETITION FOR DAMAGES**

Defendants Frank White, Jr. ("White"), V. Edwin Stoll ("Stoll"), Mark Trosen
("Trosen"), Dennis Dumovich ("Dumovich"), Whitney Miller ("Miller"), and Jackson
County, Missouri ("Defendants"), through their undersigned counsel of record, hereby answer
Plaintiff's Petition for Damages as follows:

**Jurisdiction and Venue**

1.      This Court has jurisdiction of the matters raised in this Petition.

**ANSWER**:      **Paragraph 1 of Plaintiff's Petition states a legal conclusion to which no
response is required.   To the extent Paragraph 1 includes any factual averments to which a
response is required, Defendants admit that this case has been properly removed and that
jurisdiction is proper in the United States District Court for the Western District of Missouri.**

1

2.     Venue is proper in this Court because the facts giving rise to Plaintiff's claims occurred in Jackson County, Missouri.

**ANSWER**:     **Paragraph 2 of Plaintiff's Petition states a legal conclusion to which no response is required.   To the extent Paragraph 2 includes any factual averments to which a response is required, Defendants admit that this case has been properly removed and that venue is proper in the United States District Court for the Western District of Missouri.**

## Parties

3.     Plaintiff is a Missouri resident.

**ANSWER**:     **Defendants are without sufficient information to admit or deny the allegations in Paragraph 3 of Plaintiff's Petition and, therefore, deny the same.**

4.     Defendant Jackson County Executive Frank White, Jr. ("Defendant Executive White") is an individual who is, upon information and belief, a Missouri resident. He is the Executive for Jackson County, Missouri, and is sued in his official and individual capacities. He is an employee of Jackson County, Missouri. Under Defendant Jackson County Charter, Defendant Executive White "shall be responsible for the administration of all affairs of the county" and the "director of each department shall organize and manage the department, subject to the coordination and supervision of the County Executive." Jackson County Charter Art. III, §5, Art. IV, §3 (Filed May 24, 2010). In addition, under the Jackson County Charter, Defendant Executive White is charged to "[e]xecute and enforce the provisions of this charter, and the ordinances, resolutions and policies of the County Legislature, and the laws of the state pertaining to the government of the county [and] see that all contracts with the county are faithfully performed[.]" *Id*. at Art. III, §6(5). Pursuant to the Mission Statement of the County Executive, Defendant White is "charged with responsibility for executing and enforcing the ordinances, resolutions and policies of the

Legislature and laws of the state pertaining to county government."

**ANSWER**: **Defendants admit that Defendant Frank White is an individual, a Missouri resident, is the County Executive for Jackson County, Missouri, and that Plaintiff's Petition purports to assert claims against Defendant White in his official and individual capacities. Responding to the remaining allegations in Paragraph 4 of Plaintiff's Petition, Defendants admit only that Plaintiff has accurately quoted the Jackson County Charter and Mission Statement of the County Executive. Defendants deny any remaining allegations or implications in Paragraph 4.**

5.     Defendant V. Edwin Stoll ("Defendant Stoll") is an individual who is, upon information and belief, a Missouri resident. He is the Jackson County Chief Administrative Officer and is sued in his official and individual capacities. He is an employee of Jackson County, Missouri.

**ANSWER**: **Defendants admit that Defendant Stoll is an individual, a Missouri resident, is the Jackson County Chief Administrative Officer, and that Plaintiff's lawsuit purports to assert claims against Defendant Stoll in his official and individual capacities. Defendants deny any remaining allegations or implications in Paragraph 5.**

6.     Defendant Mark Trosen ("Defendant Trosen") is an individual who is, upon information and belief, a Missouri resident. He is the former Jackson County Director of Finance and is sued in his official and individual capacities. He is an employee of Jackson County, Missouri.

**ANSWER**: **Defendants admit that Defendant Trosen is an individual, a Missouri resident, was the former acting Jackson County Director of Finance, and that Plaintiff's lawsuit purports to assert claims against Defendant Trosen in his official and individual capacities. Defendants deny any remaining allegations or implications in Paragraph 6.**

7.     Defendant Dennis Dumovich ("Defendant Dumovich") is an individual who is,

upon information and belief, a Kansas resident. He is the Jackson County Director of Human Resources and is sued in his official and individual capacities. He is an employee of Jackson County, Missouri.

**ANSWER**:    **Defendants admit that Defendant Dumovich is an individual, a Kansas resident, is the Jackson County Director of Human Resources, and that Plaintiff's lawsuit purports to assert claims against Defendant Dumovich in his official and individual capacities.   Defendants deny any remaining allegations or implications in Paragraph 7.**

8.      Defendant Whitney Miller ("Defendant Miller") is an individual who is, upon information and belief, a Missouri resident.   She is a former Assistant Jackson County Counselor and is sued in her official and individual capacities.   She is an employee of Jackson County, Missouri.

**ANSWER**:    **Defendants admit that Defendant Miller is an individual, a Missouri resident, was a former Assistant Jackson County Counselor, and that Plaintiff's lawsuit purports to assert claims against Defendant Miller in her official and individual capacities. Defendants deny any remaining allegations or implications in Paragraph 8.**

9.      Defendant Jackson County, Missouri, is a "corporate and political body" organized and existing under Charter and maintains a principal place of business at 415 East 12th Street, Kansas City, MO 64106.   Under Defendant Jackson County Charter, the Jackson County Merit System Commission is a commission set up by Jackson County with members appointed by Defendant White and is served by Defendant Dumovich as its secretary.

**ANSWER**:    **Defendants admit that Jackson County, Missouri is a Missouri County and a municipal corporation organized under the laws of the State of Missouri and that its principal place of business is at 415 East 12th Street, Kansas City, MO 64106.   Responding**

to the remaining allegations in Paragraph 9 of Plaintiff's Petition, Defendants state that the County Charter speaks for itself and, therefore, deny Plaintiff's allegations related thereto and his characterization of same.

10. The individual Defendants' actions alleged throughout were done under color of state law.

**ANSWER**: **The allegations in Paragraph 10 of Plaintiff's Petition state a legal conclusion to which no response is required. To the extent Paragraph 10 of Plaintiff's Petition includes any factual allegations requiring a response, Defendants state Paragraph 10 is vague, ambiguous, and subject to multiple interpretations, therefore, Defendants have insufficient information to either admit or deny the allegations in Paragraph 10 and, therefore, deny the same.**

11. In January 2018, Defendants indefinitely suspended Plaintiff and then, after over 200 days of indefinite suspension, ultimately terminated Plaintiff, all in retaliation for Plaintiff voicing his objections to and refusing to use certain taxpayer funds to make illegal payments in violation of the law.

**ANSWER**: **Defendants deny the allegations in Paragraph 11 of Plaintiff's Petition.**

**Background Facts**

12. Plaintiff incorporates the above paragraphs as if set forth fully here.

**ANSWER**: **Defendants incorporate by reference all previous paragraphs and answers, and those that follow, by reference, as if fully set forth in these allegations and answers.**

13. Until he was unlawfully terminated in September 2018, Plaintiff had served in the Jackson County Finance Department for just short of 15 years. Most recently, Plaintiff had served

5

as Deputy Director for almost 8 years.

**ANSWER**: Defendants admit Plaintiff worked in the Jackson County Finance Department from October 2003, until September 2018. Defendants also admit that Plaintiff served as Deputy Director of the Jackson County Finance Department from February 1, 2008, to September 24, 2018. Defendants deny each and every remaining allegation or implication in Paragraph 13 of Plaintiff's Petition.

14. Over his 15-year tenure, Plaintiff had been an exemplary employee and received the highest levels of praise on his performance reviews every year, as well as monetary raises and promotions that recognized his quality performance and exemplary work ethic.

**ANSWER**: Defendants admit Plaintiff received some monetary raises and promotions during his employment at Jackson County, Missouri. Defendants deny each and every remaining allegation or implication in Paragraph 14 of Plaintiff's Petition including, but not limited to, Plaintiff's vague and ambiguous assertion that he was an "exemplary employee," or that he received "highest levels of praise on his performance reviews every year."

15. In 1989, Jackson County voters first approved the collection of a renewable sales tax for fighting drugs and violence in the community called the Community Backed Anti-Crime Tax ("COMBAT"). Most recently, in November 2018, voters approved the extension of the collection of COMBAT for another nine years by a 77% margin.

**ANSWER**: Defendants admit the allegations in Paragraph 15 of Plaintiff's Petition.

16. COMBAT is the County's anti-drug and anti-violence sales tax and its funds are required to be used to fund jobs in the Prosecutor's Office, Sheriff's Department, Drug Abuse

6

Response Team (or "DART"), Drug Task Force, Drug Court, approved drug treatment programs and victim advocacy programs, and the Jackson County jail.

**ANSWER**:    **Paragraph 16 of Plaintiff's Petition states a legal conclusion to which no response is required.  To the extent Paragraph 16 includes any factual averments to which a response is required, Defendants deny the factual allegations in Paragraph 16 of Plaintiff's Petition.**

17.    The COMBAT sales tax generates over $22 million each budget year.

**ANSWER**:    **Defendants deny the allegations in Paragraph 17 of Plaintiff's Petition.**

18.    On December 11, 2017, the Jackson County Legislature passed Ordinance 5061. Ordinance 5061 strips White of his authority over COMBAT and places the day-to-day supervision of COMBAT under the Jackson County Prosecutor Jean Peters Baker.

**ANSWER**:    **Defendants admit that, on December 11, 2017, the Jackson County Legislature passed Ordinance 5061.   Responding to the remaining allegations in Paragraph 18, Defendants state Ordinance 5061 speaks for itself and Defendants deny Plaintiff's characterization of the same.**

19.    On December 20, 2017, Defendant White attempted to veto Ordinance 5061.

**ANSWER**:    **Defendants admit that on December 20, 2017, Defendant White exercised his lawful executive power and vetoed Ordinance 5061.  Defendants deny any remaining allegations or implications in Paragraph 19 of Plaintiff's Petition.**

20.    On December 28, 2017, the Jackson County Legislature overrode Defendant White's attempted veto of Ordinance 5061.

**ANSWER**:    **Defendants admit the allegations in Paragraph 20 of Plaintiff's Petition.**

21.    Under Article II § 1, 1072 of Defendant Jackson County Charter, the Jackson

7

County Legislature is delegated the authority to pass county ordinances.

**ANSWER**: The allegations in Paragraph 21 of Plaintiff's Petition state legal conclusions to which no response is required. Further responding to the allegations in Paragraph 21 of Plaintiff's Petition, Defendants state that Article II § 1, 1072 of the Jackson County Charter speaks for itself and Defendants deny Plaintiff's characterization of the same.

22. Legislative county ordinances are presumed to be valid and lawful.

**ANSWER**: The allegations in Paragraph 22 of Plaintiff's Petition state a legal conclusion to which no response is required. To the extent Paragraph 22 of Plaintiff's Petition states any factual averments to which a response is required, Defendants are without sufficient information to admit or deny the vague and ambiguous allegations in Paragraph 22 of Plaintiff's Petition and, therefore, deny the same.

23. As of December 28, 2017, Ordinance 5061 was the law of the land (and still is). This reality was recently reaffirmed by a Jackson County Circuit Court on August 31, 2018, in *Burnett, et al. v. Frank White, Jr.,* Case No. 1816-CV-01045, Division 11 (George E. Wolf, J., Aug. 31, 2018) (Judgment and Order Granting County Legislature and Prosecuting Attorney's Joint Motion for Summary Judgment and Denying Third Party Plaintiff White's Motion for Summary Judgment).

**ANSWER**: The allegations in Paragraph 23 of Plaintiff's Petition state a legal conclusion to which no response is required. Further responding to the allegations in Paragraph 23 of Plaintiff's Petition, Defendants state the Honorable George E. Wolf, J., opinion in *Burnett, et al. v. Frank White, Jr.,* Case No. 1816-CV-01045, Division 11 speaks for itself, and Defendants deny Plaintiff's characterization of the same. To the extent

8

Paragraph 23 of Plaintiff's Petition states any factual averments to which a response is required, Defendants are without sufficient information to admit or deny the vague and ambiguous allegations in Paragraph 23 of Plaintiff's Petition and, therefore, deny the same.

24.     As of December 28, 2017, Defendant White and his administration including Defendants Stoll, Trosen, Dumovich and Miller, had no control over and no authority to lawfully order the payment of COMBAT funds.

**ANSWER**:     **The allegations in Paragraph 24 of Plaintiff's Petition state a legal conclusion to which no response is required.   To the extent Paragraph 24 of Plaintiff's Petition states any factual averments to which a response is required, Defendants are without sufficient information to admit or deny the vague and ambiguous allegations in Paragraph 24 of Plaintiff's Petition and, therefore, deny the same.**

### Defendants' Unlawful Actions

25.     Despite the clear directives from the Legislature and Ordinances 5061, on December 29, 2017, the very next day after the veto override, Defendant Stoll met with Defendants Dumovich and Trosen and Defendant White's Chief of Staff Caleb Clifford, Ashley Burke and Mark Lang. Defendants Stoll, Dumovich and Trosen and Defendant White's Chief of Staff Clifford conspired to create 21 Employee Change Authorizations (or "ECA"s), some that were in violation of Ordinance 5061and caused the submission of the ECAs to the Finance Department where Plaintiff worked.

**ANSWER**:     **Defendants deny the allegations in Paragraph 25 of Plaintiff's Petition.**

26.     Defendants White, Dumovich, Stoll and Trosen, acting under the color of state law, all demanded that Plaintiff violate the law with taxpayer money in December 2017 by seeking to illegally direct COMBAT funds without the approval of the Prosecuting Attorney and for purposes

that were outside of COMBAT-approved purposes of fighting drugs and violence.

**ANSWER**: **The allegations in Paragraph 26 of Plaintiff's Petition state legal conclusions to which no response is required. To the extent Paragraph 26 of Plaintiff's Petition includes any factual averments to which a response is required, Defendants deny the allegations in Paragraph 26 of Plaintiff's Petition.**

27. Specifically, Defendants' ECAs directed the unlawful use of COMBAT funds in 2018 to pay certain individuals without the approval of the County Prosecutor. For example, the ECA concerning Defendant White's compensation directed that 15% of White's salary now come from COMBAT. The ECAs were signed by Defendants White, Trosen and Dumovich. Also at that time, Defendant Stoll sent Plaintiff an email insisting that the ECA entries be made.

**ANSWER**: **Defendants deny the allegations in Paragraph 27 of Plaintiff's Petition.**

28. On January 4, 2018, Jackson County Prosecutor Jean Peters Baker sent communication to Finance management and County Executive Administration reiterating the powers provided to her in the ordinance. She stated specifically "…any expenditures are to be authorized by me. To be clear, no member of your staff has authority to direct the spending of Combat dollars." Peters Baker also set this email to all Finance Managers, including Plaintiff.

**ANSWER**: **Upon information and belief, Defendants admit that Jackson County Prosecutor Jean Peters-Baker sent a communication to members of the Finance Department's management, Finance managers, Plaintiff, and the County Executive Administration stating, "…any expenditures are to be authorized by me. To be clear, no member of your staff has authority to direct the spending of Combat dollars." Further responding to the allegations in Paragraph 28, Defendants state Ms. Peters-Baker's communication speaks for itself and deny Plaintiff's characterization of the same.**

29. The ECAs presented by Defendants White and Dumovich violated the law, as they were *expressly unauthorized* by Peters Baker, the only person with the legal authority to do so.

**ANSWER**: **The allegations in Paragraph 29 state legal conclusions to which no response is required. To the extent Paragraph 29 states any factual averments to which a response is required, Defendants deny the allegations and implications of Paragraph 29 of Plaintiff's Petition.**

30. In addition, the ECAs violated the law because they were for individuals whose duties were outside of the approved and stated COMBAT fund use, *i.e.,* to fight drugs and violence in the community.

**ANSWER**: **The allegations in Paragraph 30 state legal conclusions to which no response is required. To the extent Paragraph 30 states any factual averments to which a response is required, Defendants deny the allegations and implications of Paragraph 29 of Plaintiff's Petition.**

31. In addition, Section 15.1 of Defendant Jackson County's own Personnel Rules provide that circumstances constituting cause for disciplinary actions of suspension and termination against a merit system employee like Plaintiff include "violation of any provisions of …ordinances." In short, Plaintiff was prohibited by Defendant Jackson County's own Personnel Rules from making the ECAs. If he were to make the ECAs, he could be suspended and terminated for violating an ordinance.

**ANSWER**: **Responding to Plaintiff's characterization of Jackson County's Personnel Rules, Defendants state that the Rules speak for themselves and deny Plaintiff's characterization of the same. Further responding to the allegations in Paragraph 31 of Plaintiff's Petition, Defendants state the allegations in Paragraph 31 of Plaintiff's Petition**

state legal conclusions to which no response is required. To the extent Paragraph 31 states any factual averments to which a response is required, Defendants admit Jackson County's Personnel Rules contemplate the possibility of disciplinary actions including, but not necessarily limited to, suspension or termination against a merit system employee for violations of any provisions of Jackson County's ordinances.

32. Faced with violating the law by illegally disbursing taxpayer money over which he had a fiduciary duty to administer as well as violating Defendant Jackson County's Personnel Rules that would subject him to disciplinary action, Plaintiff made several attempts to meet and discuss Ordinance 5061 with County Executive Administration including Defendant Finance Director Trosen and Defendant CAO Stoll to get guidance and help, but received none. Plaintiff was trying to make sure that he did not violate the law and that the Jackson County employees who were the subjects of the ECAs got paid on pay day.

**ANSWER**: **Defendants deny Plaintiff's allegation that he received no guidance or help or that he was not given an opportunity to meet with or discuss Ordinance 5061 with the County Executive Administration. Defendants are without sufficient information to admit or deny whether Plaintiff was "trying to make sure that he did not violate the law and that the Jackson County employees who were subjects of the ECAs got paid on pay day" and, therefore, deny the same. The remaining allegations in Paragraph 32 of Plaintiff's Petition state legal conclusions to which no response is required. To the extent Paragraph 32 of Plaintiff's Petition includes any factual averments to which a response is required, Defendants deny the remaining allegations or implications in Paragraph 32 of Plaintiff's Petition.**

33. Instead of engaging in good faith with Plaintiff and, moreover, bypassing

protections Plaintiff had as a merit system employee (as set forth below), Defendants Stoll, Trosen, Miller and Jackson County indefinitely and unlawfully suspended Plaintiff that same day, January 10, 2018, in retaliation for Plaintiff's refusal to violate Ordinance 5061 and unlawfully disburse COMBAT funds on Defendants' behalf.

**ANSWER**:    **Defendants deny the allegations and implications in Paragraph 33 of Plaintiff's Petition.**

34.    The day after Plaintiff was suspended, on January 11, 2018, in an article that ran in *The Kansas City Star,* Defendant Stoll defamed Plaintiff as follows: "[Defendant CAO] Stoll said Jacoby was under investigation for being 'unwilling to perform the essential function of [his] position, which could result in a violation of federal law."

**ANSWER**:    **Defendants admit that an article ran in *The Kansas City Star* on December 11, 2018, in which Defendant Stoll was quoted: "[Defendant CAO] Stoll said Jacoby was under investigation for being 'unwilling to perform the essential function of [his] position, which could result in a violation of federal law."   Defendants deny that Plaintiff was suspended on January 10, 2018.   The remaining allegations in Paragraph 34 of Plaintiff's Petition state legal conclusions to which no response is required.   To the extent Paragraph 34 includes any additional factual averments to which a response is required, Defendants deny the remaining allegations or implications in Paragraph 34 of Plaintiff's Petition.**

35.    On January 10, 2018, the day of Plaintiff's unlawful and indefinite suspension, Prosecutor Peters Baker, the Chair of the Jackson County Legislature Scott Burnett and Jackson County Sheriff Mike Sharp issued the following press release: "We are imploring Jackson County Executive Frank White and Caleb Clifford, his chief of staff, to immediately reinstate this official

who was only trying to follow the law."

**ANSWER**:    **Defendants admit that on January 10, 2018, Prosecutor Peters-Baker, the Chair of the Jackson County Legislature, Scott Burnett, and Jackson County Sheriff Mike Sharp, issued a press release stating: "We are imploring Jackson County Executive Frank White and Caleb Clifford, his chief of staff, to immediately reinstate this official who was only trying to follow the law."   Defendants deny that Plaintiff was suspended on January 10, 2018.   The remaining allegations in Paragraph 35 of Plaintiff's Petition state legal conclusions to which no response is required.   To the extent Paragraph 35 includes any additional factual averments to which a response is required, Defendants deny the remaining allegations or implications in Paragraph 35 of Plaintiff's Petition.**

36.    Jackson County Prosecutor Peters Baker may have summed it up best when she said, "You have no authority to harm public servants who come to this courthouse to do the real hard work of this county. They are not political footballs."

**ANSWER**:    **Defendants admit Jackson County Prosecutor Jean Peters Baker is quoted as having said: "You have no authority to harm public servants who come to this courthouse to do the real hard work of this county. They are not political footballs." Defendants deny the remaining allegations or implications in Paragraph 36 of Plaintiff's Petition.**

37.    According to court documents in a case filed against Defendant Executive White by Prosecutor Peters Baker and the Jackson County Legislature over the administration of COMBAT funds shortly after Plaintiff's indefinite suspension, Defendant White's Administration, with the assistance of Defendants Stoll and Dumovich, further pursued the unlawful entries to pay certain individuals with COMBAT funds for several pay periods, which were made in violation of

Ordinance 5061.

**ANSWER**: **Defendants deny that Plaintiff was indefinitely suspended by Defendants. Responding to the remaining allegations in Paragraph 37 of Plaintiff's Petition, Defendants state any "court documents" in any case filed against Defendant White speak for themselves and Defendants deny Plaintiff's characterization of the same.**

38. Upon information and belief, Human Resources assisted with the payment of the ECAs for the first two payrolls in 2018.

**ANSWER**: **Given the vague and ambiguous nature of the allegations in Paragraph 38 of Plaintiff's Petition, Defendants are without sufficient information to admit or deny the allegations in Paragraph 38 of Plaintiff's Petition and, therefore, deny the same.**

39. The ECAs directed COMBAT payments to Defendant White and other individuals whose jobs, upon information and belief, did not involve fighting drugs or crime in the community. Moreover, the Jackson County Prosecuting Attorney expressly said "no member of [Defendant White's] staff has authority to direct the spending of Combat dollars."

**ANSWER**: **Upon information and belief, Defendants admit the Jackson County Prosecuting Attorney said "no member of [Defendant White's] staff has authority to direct the spending of Combat dollars." Defendants deny the remaining allegations or implications in Paragraph 39 of Plaintiff's Petition.**

40. Plaintiff submitted a complaint in writing on January 10, 2018, to Defendants White, Stoll, Trosen and Dumovich about Defendants' unlawful acts and serious misconduct that violated the law, pursuant to the Jackson County Personnel Rules. Among other things, Plaintiff protested that "County Executive's Administration are paying associates with COMBAT funds without approval of the County Prosecutor." Defendants White, Stoll, Trosen and Dumovich never

responded to Plaintiff about his complaint. Instead, Plaintiff was suspended and himself came under investigation. On February 6, 2018, an investigator for Defendant Jackson County communicated to Plaintiff via his counsel that her company was hired "to determine whether Mr. Jacoby violated policy and/or law by failing to process the payroll (or ECAs), or by instructing others not to process the payroll (or ECAs)."

**ANSWER**: **Defendants deny that Plaintiff was suspended on January 10, 2018. Defendants admit that an investigation was started on January 10, 2018 regarding Plaintiff and that Defendant Jackson County hired an outside, third-party investigator to conduct the same. Responding to remaining allegations in Paragraph 40, Defendants state Plaintiff's January 10, 2018 email speaks for itself and Defendants deny Plaintiff's characterization of the same. Defendants are without sufficient information to admit or deny any remaining allegations or implications in Paragraph 40 of Plaintiff's Petition and, therefore, deny the same.**

41. According to a November 15, 2018 article in the *Kansas City Star*, the COMBAT payments described above are currently part of an audit by Missouri Auditor Nicole Galloway of Jackson County to address "concerns" about "how tax dollars were being spent."

**ANSWER**: **Responding to the allegations in Paragraph 41, Defendants state the cited *Kansas City Star* article speaks for itself and deny Plaintiff's characterization of the same.**

### Defendant Jackson County's Charter, Personnel Rules and Merit System Commission Protections

42. Defendant Jackson County's Charter, Personnel Rules and Merit System give employees like Plaintiff protection from the unlawful actions taken here.

**ANSWER**: **Responding to the allegations in Paragraph 42, Defendants state**

Jackson County's Charter, Personnel Rules and Merit System rules speak for themselves and deny Plaintiff's characterization of the same. Further responding to the allegations in Paragraph 42 of Plaintiff's Petition, Defendants deny each and every remaining allegation or implication in Paragraph 42 of Plaintiff's Petition and specifically deny taking any unlawful actions against Plaintiff.

43. Specifically, the Jackson County Personnel Rules provide that it "supports the rights of all individuals" and further promises that permanent merit system employees like Plaintiff are protected from adverse employment actions like suspension and discharge "because of … any status protected by law."

**ANSWER**: **Responding to the allegations in Paragraph 43, Defendants state Jackson County's Personnel Rules speak for themselves and deny Plaintiff's characterization of the same. Further responding to the allegations in Paragraph 43 of Plaintiff's Petition, Defendants deny each and every remaining allegation or implication in Paragraph 43 of Plaintiff's Petition and specifically deny that Plaintiff was suspended by Defendants.**

44. Plaintiff's objections to and refusal to violate the law are a status protected by law under the Missouri Whistleblower Protection Act, Mo. Rev. Stat. §285,575, *et seq.* in that, at all relevant times, Plaintiff reported to the proper authorities an unlawful act of his or her employer, reported serious misconduct of the employer that violated a clear mandate of public policy as articulated in a law, and/or is an employee of an employer who refused to carry out a directive issued by his employer that if completed would have been a violation of the law.

**ANSWER**: **The allegations in Paragraph 44 state legal conclusions to which no response is required. To the extent Paragraph 44 includes any factual averments to which**

a response is required, **Defendants deny any factual averments in Paragraph 44 of Plaintiff's Petition. Further answering, Defendants expressly deny that the Missouri Whistleblower Protection Act, Mo. Rev. Stat. §285,575,** *et seq.* **applies to the Defendants named in Plaintiff's Petition.**

45. Plaintiff's objections and refusal to violate the law are a status protected by federal laws, as well, specifically 42 U.S.C. §1983, which prevents retaliation against Plaintiff and protects Plaintiff's procedural and substantive due process rights under the Fourteenth Amendment of the U.S. Constitution and Plaintiff's right to free speech under the First Amendment of the U.S. Constitution.

**ANSWER**: **The allegations in Paragraph 45 state legal conclusions to which no response is required. To the extent Paragraph 45 includes any factual averments to which a response is required, Defendants deny any factual averments in Paragraph 45 of Plaintiff's Petition.**

46. The Personnel Rules further provide:

a. These rules set forth the principles and procedures which will be followed by Jackson County in the administration of its Personnel program. They are intended to establish an efficient, equitable and functional system of Personnel administration based on merit principles which govern the appointment, promotion, transfer, layoff, dismissal, discipline and other related conditions of employment.

[Section 1.1]

b. The Director of Human Resources [Defendant Dumovich], under the Manager of the Division of Administration, shall be charged with the

responsibility for the administration of these rules.   [Section 1.3]

c.      All positions of County employment not specifically designated as non-merit shall be merit positions.   [Rule 2, Section 3.1]

d.      **Appointing Authority.**   An elected official, charter officer, division manager, department director or his designee.   [Rule 2]

e.      An Appointing Authority may suspend an employee with or without pay for any period not to exceed thirty calendar days in any twelve months.   During the suspension, the employee shall not report to work.   No single period of suspension shall exceed fifteen calendar days.

[Section 15.3]

f.      Every non-probationary merit employee shall have the right to appeal to the Merit System Commission any demotion, termination, suspension or budgetary layoff taken against him/her.   [Section 15.8]

g.      Upon request by an affected employee, the Commission shall review any demotion, termination, suspension, or budgetary layoff or any merit employee to determine if the act was the result of discrimination based on …political activity…or was otherwise without cause.

[Section 15.8]

h.      The employee shall have ten working days form the receipt of notice to file an appeal to the Merit System Commission.   [Section 15.8]

i.      Upon receipt of an appeal the [Defendant] Director of Human Resources shall notify the chairman of the Merit System Commission who shall set a day for the hearing of the appeal.   [Section 15.8]

j.     The hearing date shall be scheduled by the chairman within 14 days of the filing of the appeal; the hearing must commence within 21 days of the filing of the appeal, unless continued as provided by this section.

[Section 15.8]

**ANSWER**: **Responding to the allegations in Paragraph 46, Defendants state Jackson County's Personnel Rules speak for themselves and deny Plaintiff's characterization of the same.**

47.     Plaintiff was a non-probationary merit employee.

**ANSWER**: **Defendants admit the allegations in Paragraph 47 of Plaintiff's Petition.**

48.     As a merit system employee, Plaintiff could only be suspended or discharged for "cause."

**ANSWER**: **Defendants deny the allegations in Paragraph 48 of Plaintiff's Petition.**

49.     As a merit system employee, Plaintiff also had the right not to have adverse employment actions – including suspension, termination and/or budgetary layoff – taken against him as a result of discrimination or favoritism based on political influence or coercion.

**ANSWER**: **Given the vague and ambiguous nature of the allegations in Paragraph 49 of Plaintiff's Petition, Defendants are without sufficient information to admit or deny the same and, therefore, deny the same.**

50.     As a merit system employee and as an employee of Defendant Jackson County, Plaintiff has additional substantive and procedural due process protections afforded to Plaintiff under 42 U.S.C. §1983 and the Fourteenth Amendment of the U.S. Constitution.

**ANSWER**: **The allegations in Paragraph 50 of Plaintiff's Petition state legal conclusions to which no response is required. To the extent Paragraph 50 includes any**

20

factual averments to which a response is required, Defendants deny any factual averments or implications in Paragraph 50 of Plaintiff's Petition.

51.     When Jackson County indefinitely suspended Plaintiff, it called it "paid administrative leave," which does not exist.   Neither the Jackson County Personnel Rules nor the Merit System Rules provide for any "paid administrative leaves," and, as a merit system employee, Plaintiff could not have been placed on an "administrative leave."   Both the Jackson County Personnel Rules and the Merit System Rules provide for "suspensions" "with pay" and Merit System Commission review of paid suspensions.   The Personnel Rules also provide for Merit System Commission review of terminations and budgetary layoffs.

**ANSWER**:   **Defendants deny that Plaintiff was indefinitely suspended. Defendants admit that Plaintiff was placed on paid administrative leave.   Defendants also admit that the Jackson County Personnel Rules and Merit System Rules include provisions related to suspensions with pay.   Responding to the remaining allegations in Paragraph 51, Defendants state Jackson County's Personnel Rules speak for themselves and deny Plaintiff's characterization of the same.**

52.     Plaintiff was deprived of his rights as a merit system employee.

**ANSWER**:     **Defendants deny the allegations in Paragraph 52 of Plaintiff's Petition.**

53.     As a merit system employee, Plaintiff had the right to have the Merit System Commission review the adverse employment actions taken against him, including his suspension with pay and subsequent termination, which was pretextually couched by Defendant Jackson County as a one-person "budgetary layoff."

**ANSWER**:     **Defendants deny that Plaintiff was suspended with pay or terminated. Defendants admit Plaintiff was laid off as part of a budgetary reduction in force.**

21

Defendants deny that Plaintiff's budgetary layoff was "pretextually couched." Responding to the remaining allegations in Paragraph 53, Defendants state the Jackson County Personnel Rules and Merit System Rules speak for themselves and deny Plaintiff's characterization of the same.

54.     Defendant Jackson County's Merit System Commission is a commission that is established by Defendant Jackson County Charter.

**ANSWER**:     **Defendants admit the allegations in Paragraph 54 of Plaintiff's Petition.**

55.     Pursuant to Article IX, Section 3 of Defendant Jackson County Charter dated May 24, 2010, "There shall be a merit system commission …appointed by the county executive [Defendant White]." *See also* Ordinance 553, Chapter 75 dated June 9, 2015.

**ANSWER**:     **Defendants admit only that Plaintiff has accurately quoted the Jackson County Charter.   Defendants deny any remaining allegations or implications in Paragraph 55 of Plaintiff's Petition.**

56.     In addition, the Charter provides that "The director of human resources [Defendant Dumovich] shall be secretary of the commission[.]"

**ANSWER**:     **Defendants admit Plaintiff has accurately quoted the Jackson County Charter.   Defendants deny any remaining allegations or implications in Paragraph 56 of Plaintiff's Petition.**

57.     Pursuant to Chapter 75, when the Defendant Director of Human Resources Dumovich receives an appeal, he "shall notify the Chairman of the Merit System Commission" and the "Chairman of the Merit System Commission shall set date for the hearing of the appeal….within twenty-one (21) days of the filing of the appeal unless continued[.]" [Sections 7535, 7536]

**ANSWER**:   Defendants admit Plaintiff has accurately quoted the Jackson County Charter.  Defendants deny any remaining allegations or implications in Paragraph 57 of Plaintiff's Petition.

58.     Further, Defendant Jackson County Charter provides that Merit System Commission "Members shall be in sympathy with the merit system of public employment" and its "function is to consider whether the action … was a result of discrimination or [was] otherwise without cause."

**ANSWER**:   Defendants deny that Plaintiff has accurately quoted the Jackson County Charter and, accordingly, has taken the Charter out of context.   Defendants deny any remaining allegations or implications in Paragraph 57 of Plaintiff's Petition.

59.     Despite these mandates in the Charter, the Jackson County Personnel Rules, the Merit System Rules and state and federal law, Jackson County's Merit System Commission acted in concert with Defendants to deny Plaintiff his substantive and procedural due process rights by failing and refusing to hold a hearing on Plaintiff's indefinite suspension or his discharge within 21 days, as outlined below. *Id.*

**ANSWER**:   The allegations in Paragraph 59 of Plaintiff's Petition state legal conclusions to which no response is required.   To the extent Paragraph 59 includes any factual averments to which a response is required, Defendants deny any factual averments or implications in Paragraph 59 of Plaintiff's Petition.

**Plaintiff's Appeal of His Indefinite Suspension and His Discharge**

60.     Pursuant to the Jackson County Charter, Personnel Rules and Merit System Rules, within ten working days of his January 10 unlawful suspension, on January 23, 2018, Plaintiff submitted a written request for appeal of his suspension to Defendant Dumovich setting forth,

pursuant to section 7534.1, "the name of the employee; the position of the employee with the county; the nature of the action taken against that employee; and the reason for the appeal."

    **<u>ANSWER</u>**:   **Defendants admit only that on January 23, 2018, Plaintiff's attorney purported to make a request for appeal of Plaintiff's alleged suspension and that the notice purported to satisfy the requirements of Section 7534.1.  Defendants deny each and every remaining allegation or implication in Paragraph 60 of Plaintiff's Petition.**

61.    On January 25, 2018, Defendant Miller forwarded Plaintiff's request for appeal to the Merit System Commission, but no hearing was set.

    **<u>ANSWER</u>**:   **Defendants admit that on January 25, 2018, Defendant Miller, in her former role as an Assistant County Counselor, forwarded Plaintiff's counsel's communication to the Merit System Commission and, because Plaintiff had not been suspended, no hearing was set on his purported appeal.  Defendants deny each and every remaining allegation or implication in Paragraph 61 of Plaintiff's Petition.**

62.    On February 16, 2018, Plaintiff participated in good faith in an investigation instigated by Jackson County upon Plaintiff's suspension. The investigation was conducted by Ann Molloy of Encompass Resolution and completed in March 2018 (the "Molloy Report").

    **<u>ANSWER</u>**:   **Defendants admit that Ann Molloy of Encompass Resolution conducted was retained to conduct an investigation related to the allegations in Plaintiff's Petition.  Defendants are without sufficient information to admit or deny the remaining allegations in Paragraph 62 and, therefore, deny the same.**

63.    Plaintiff heard nothing and followed up with a request about his unlawful suspension on March 28, 2018, but, again, was ignored.

    **<u>ANSWER</u>**:   **Defendants deny that Plaintiff was suspended or that Plaintiff was**

"ignored." Responding to the remaining allegations in Paragraph 63 of Plaintiff's Petition, Defendants are without sufficient information to admit or deny the remaining allegations in Paragraph 63 of Plaintiff's Petition and, therefore, deny the same.

64. Despite his timely appeal, Defendants failed and refused to provide Plaintiff with a public hearing with the Merit System Commission for Plaintiff's indefinite and unlawful suspension, as required by the Jackson County Personnel Rules, Merit System Commission Rules and Charter.

**ANSWER**: **Defendants deny that Plaintiff was placed on an indefinite or unlawful suspension. Defendants admit that no appeal was heard by the Merit System Commission related to Plaintiff's paid administrative leave. Responding to the remaining allegations in Paragraph 64, Defendants state the Jackson County Personnel Rules, Merit System Commission Rules, and Charter speak for themselves and deny Plaintiff's characterization of the same.**

65. When it indefinitely suspended him on January 10, 2018, the County promised Plaintiff a copy of the investigation results (*i.e.,* the Molloy Report).

**ANSWER**: **Defendants deny the allegations in Paragraph 65 of Plaintiff's Petition.**

66. To date, Defendant Jackson County has refused and continues to refuse sharing the results of its investigation, despite promising them to Plaintiff when it suspended Plaintiff and despite Plaintiff's requests for the Molloy Report under the Missouri Sunshine Act, Mo. Rev. Stat. §610.010, *et seq.*

**ANSWER**: **Defendants admit that Plaintiff was not provided a copy of the "Molloy Report." Defendants deny that Plaintiff was "promised" a copy of the "Molloy Report." The remaining allegations and implications in Paragraph 66 of Plaintiff's Petition state legal**

25

conclusions to which no response is required. To the extent Paragraph 66 includes any additional factual averments to which a response is required, Defendants deny the remaining allegations or implications in Paragraph 66 of Plaintiff's Petition.

67. In August 2018, Jackson County Counselor Stephen Nixon asked Plaintiff to make a retirement severance proposal whereby Plaintiff would release all of his claims including claims under the Missouri Whistleblower Protection Act against the County and County individuals.

**ANSWER**: **Responding to the allegations in Paragraph 67 of Plaintiff's Petition, Defendants state communications between Jackson County Counselor Stephen Nixon and Plaintiff, if any, speak for themselves and Defendants deny Plaintiff's characterization of the same. Further responding to the allegations in Paragraph 67 of Plaintiff's Petition, Defendants state that, to the extent Jackson County Counselor Stephen Nixon engaged in any settlement conversations with Plaintiff or his counsel, such communications are inappropriately included in Paragraph 67 and are not admissible under Rule 408 of the Federal Rules of Evidence and should be stricken from Plaintiff's Petition.**

68. In August 2018, Jackson County Counselor Nixon also informed Plaintiff that, since his indefinite suspension in January, his duties and responsibilities had been performed by another Jackson County employee, Cheryl Colter.

**ANSWER**: **Responding to the allegations in Paragraph 68 of Plaintiff's Petition, Defendants state communications between Jackson County Counselor Stephen Nixon and Plaintiff, if any, speak for themselves and Defendants deny Plaintiff's characterization of the same. Further responding to the allegations in Paragraph 68 of Plaintiff's Petition, Defendants state that, to the extent Jackson County Counselor Stephen Nixon engaged in any settlement conversations with Plaintiff or his counsel, such communications are**

inappropriately included in Paragraph 68 and are not admissible under Rule 408 of the Federal Rules of Evidence and should be stricken from Plaintiff's Petition.

69.     Upon information and belief, Cheryl Colter allowed illegal COMBAT payments demanded by Defendants in violation of Ordinance 5061. On January 11, 2018, the day after Plaintiff was suspended, Defendant Trosen resigned and Defendant White issued an Executive Order attempting to appoint Cheryl Colter as acting Director of Finance and Purchasing (a promotion for her). On January 16, 2018, the Executive Order was Disapproved by the Legislature.

**ANSWER**:     **Defendants admit Defendant Trosen resigned on January 11, 2018, that Defendant White issued an Executive Order appointing Cheryl Colter as acting Director of Finance and Purchasing, and that the Legislature disapproved the Order on January 16, 2018.  Defendants deny any remaining allegations or implications in Paragraph 69 of Plaintiff's Petition.**

70.     In August 2018, Jackson County Counselor Nixon further informed Plaintiff that the Finance Department "should be reorganized to eliminate the Deputy Director of Finance/Purchasing position" that Plaintiff held and that Cheryl Colter would perform those duties.

**ANSWER**:     **Responding to the allegations in Paragraph 70 of Plaintiff's Petition, Defendants state communications between Jackson County Counselor Stephen Nixon and Plaintiff, if any, speak for themselves and Defendants deny Plaintiff's characterization of the same.  Further responding to the allegations in Paragraph 70 of Plaintiff's Petition, Defendants state that, to the extent Jackson County Counselor Stephen Nixon engaged in any settlement conversations with Plaintiff or his counsel, such communications are inappropriately included in Paragraph 70 and are not admissible under Rule 408 of the Federal Rules of Evidence and should be stricken from Plaintiff's Petition.**

71.    In other correspondence to Plaintiff, Jackson County Counselor Nixon indicated that Plaintiff's position would remain but would be backfilled by Cheryl Colter.

**ANSWER**:    **Responding to the allegations in Paragraph 71 of Plaintiff's Petition, Defendants state communications between Jackson County Counselor Stephen Nixon and Plaintiff, if any, speak for themselves and Defendants deny Plaintiff's characterization of the same.   Further responding to the allegations in Paragraph 71, Defendants state that, to the extent Jackson County Counselor Stephen Nixon engaged in any settlement conversations with Plaintiff or his counsel, such communications are inappropriately included in Paragraph 67 and are not admissible under Rule 408 of the Federal Rules of Evidence and should be stricken from Plaintiff's Petition.**

72.    Upon information and belief, Defendants rewarded Ms. Colter for her execution of the unlawful COMBAT payments by giving her Plaintiff's duties and position and terminating Plaintiff.

**ANSWER**:    **Defendants deny the allegations and implications in Paragraph 72 of Plaintiff's Petition.**

73.    No positions other than Plaintiffs were to be affected by the alleged reorganization.

**ANSWER**:    **Defendants deny the allegations and implications in Paragraph 73 of Plaintiff's Petition.**

74.    Under Defendant Jackson County Charter, Article II, Section 16, a reorganization such as this requires legislative approval.

**ANSWER**:    **The allegations in Paragraph 74 of Plaintiff's Petition state legal conclusions to which no response is required.   To the extent the allegations in Paragraph 74 of Plaintiff's Petition include any factual averments to which a response is required,**

Defendants deny the allegations in Paragraph 74 of Plaintiff's Petition.

75. Defendants never sought or obtained legislative approval for the Finance Department "reorganiz[ation]" to eliminate Plaintiff described by Jackson County Counselor Nixon.

**ANSWER**: **Defendants admit the allegations in Paragraph 75 of Plaintiff's Petition.**

76. Moreover, such "reorganization" and Plaintiff's termination was not only unauthorized by the legislature, it was pretextual and evidence of further unlawful retaliation and damages against Plaintiff.

**ANSWER**: **Defendants deny the allegations in Paragraph 76 of Plaintiff's Petition.**

77. To help him evaluate a settlement offer, Plaintiff requested from Defendant Nixon the investigative Molloy Report, which was promised to him when he was suspended in January. This request, and Plaintiff's follow up requests for the report, have been ignored.

**ANSWER**: **Defendants are without sufficient evidence to admit or deny Plaintiff's rationale for requesting the Molloy Report and, therefore, deny Plaintiff's characterization of the same. Defendants deny the remaining allegations or implications in Paragraph 77 of Plaintiff's Petition.**

78. Plaintiff has also made a request and several follow up requests under the Missouri Sunshine Law, Mo. Rev. Stat. § 610, *et seq.*, for the Molloy Report.

**ANSWER**: **Defendants admit the allegations in Paragraph 78 of Plaintiff's Petition.**

79. To date, Defendants have failed and refused to provide Plaintiff with the Molloy Report even though it was promised to him in writing in January 2018 and even though Plaintiff properly requested it pursuant to the Missouri Sunshine Laws.

**ANSWER**: **Defendants deny the allegations in Paragraph 79 of Plaintiff's Petition.**

80.     Although Plaintiff responded to Defendants' request for a retirement proposal, Defendants never responded. Instead, Defendants terminated Plaintiff's employment.

**ANSWER**:   **Defendants deny that Plaintiff's employment was terminated. Responding to the remaining allegations in Paragraph 80 of Plaintiff's Petition, Defendants state the communications between Plaintiff and Jackson County speak for themselves and deny Plaintiff's characterization of the same.   Further responding to the allegations in Paragraph 80 of Plaintiff's Petition, Defendants state that, to the extent Defendants engaged in any settlement conversations with Plaintiff or his counsel, such communications are inappropriately included in Paragraph 80 and are not admissible under Rule 408 of the Federal Rules of Evidence and should be stricken from Plaintiff's Petition.**

81.     On September 24, 2018, Defendants caused the Jackson County Sheriff's Office to serve Plaintiff's wife at their residence with "Notice of Discharge" papers informing Plaintiff that he was "Discharge[d]" and that his "Separation Date" was September 24, 2018.

**ANSWER**:   **Defendants admit that Defendant Jackson County requested the Jackson County Sheriff's Office to serve Plaintiff with a "Notice of Discharge" with a "Separation Date" of September 24, 2018.   Defendants are without sufficient information to admit or deny the remaining allegations or implications in Paragraph 81 of Plaintiff's Petition and, therefore, deny the same.**

82.     According to the "Notice of Discharge," the "reason(s)" for Plaintiff's termination was "Budgetary layoff."

**ANSWER**:   **Defendants admit Plaintiff was laid off based on Defendant Jackson County's budgetary constraints.   Defendants deny the remaining allegations or implications in Paragraph 82 of Plaintiff's Petition.**

83. Attached to the "Notice of Discharge" is a memorandum from Defendant Stoll to Defendant Dumovich stating that Plaintiff's position was the one position in the Finance Department that should be eliminated, that Plaintiff's duties would be given to Cheryl Colter and Plaintiff would be laid off effective at 5 PM on September 24, 2018.

**ANSWER**: **Responding to the allegations in Paragraph 83 of Plaintiff's Petition, Defendants state the "Notice of Discharge" and any attached documents speak for themselves and Defendants deny Plaintiff's characterization of the same.**

84. Plaintiff's indefinite suspension and subsequent discharge are without cause in violation of the protections promised to him as a merit system employee.

**ANSWER**: **Defendants deny the allegations in Paragraph 84 of Plaintiff's Petition.**

85. Moreover, Plaintiff's indefinite suspension and subsequent discharge, as well as Defendants' refusal to provide Plaintiff with a Merit System Commission hearing on either of these adverse employment actions, are retaliatory for Plaintiff's refusal to break the law and/or engage in political activity in the illegal disbursement of taxpayer funds associated with COMBAT, are discriminatory per Defendant Jackson County's definition, are violations or procedural and substantive due process rights under 42 U.S.C. section 1983 and the U.S. Constitution and are violations of Defendants' policies and practices.

**ANSWER**: **Defendants deny that Plaintiff was placed on indefinite suspension or that his employment with Defendant Jackson County was terminated. Defendants also deny that they acted unlawfully towards Plaintiff. The remaining allegations in Paragraph 85 of Plaintiff's Petition state legal conclusions to which no response is required. To the extent Paragraph 85 includes any factual averments to which a response is required, Defendants deny the factual averments in Paragraph 85 of Plaintiff's Petition.**

31

86. The Notice of Discharge further promises Plaintiff the "right to appeal," providing "PERSONNEL RULE/SECTION 15.8 A. B. permanent merit associate shall have right to appeal to the Merit System Commission any significant act taken against an associate within ten working days from the receipt of termination notice to file an appeal."

**ANSWER**: **Responding to the allegations in Paragraph 86 of Plaintiff's Petition, Defendants state the "Notice of Discharge" speaks for itself and Defendants deny Plaintiff's characterization of the same.**

87. Under the Personnel Rules, Merit System Commission Rules and the Notice of Discharge, Plaintiff had the right to appeal both his suspension and his discharge.

**ANSWER**: **Defendants deny that Plaintiff was suspended or that his employment was terminated by Defendants. Responding to the remaining allegations in Paragraph 87 of Plaintiff's Petition, Defendants state the Personnel Rules, Merit System Commission Rules, and the Notice of Discharge speak for themselves and deny Plaintiff's characterization of the same.**

88. Although his appeal of his indefinite and unlawful suspension in January had gone ignored, Plaintiff again submitted an appeal for his suspension and discharge on September 26, 2018, within ten working days of when the Sheriff served his wife with notice of his discharge on September 25, 2018.

**ANSWER**: **Defendants admit Plaintiff's counsel purported to submit a request for appeal in January 2018. Defendants deny that Plaintiff was suspended, or that his employment was terminated by Defendants. Defendants also admit Plaintiff purported to submit an appeal for his alleged suspension and discharge on or about September 26, 2018, within 10 days of Plaintiff's notice of discharge. Defendants deny any remaining allegations**

**or implications in Paragraph 88 of Plaintiff's Petition.**

89. Like his January 23 notice of appeal, Plaintiff's September 26 notice of appeal again contained all of the information required by Chapter 7434.1, namely Plaintiff's name, position, action taken and reason for appeal.

**ANSWER:** **Responding to the allegations in Paragraph 89 of Plaintiff's Petition, Defendants state the notice of appeal speaks for itself and deny Plaintiff's characterization of the same.**

90. In an attempt to exercise his right to appeal his illegal suspension and termination of him, Plaintiff filled out the form provided by Defendants for both his unlawful suspension of 258 days starting on January 10, 2018 and his termination on September 24, 2018 as the "ACTION AGAINST EMPLOYEE."

**ANSWER:** **Defendants deny that Plaintiff was suspended on January 10, 2018 or that his employment was terminated. Responding to the remaining allegations in Paragraph 90 of Plaintiff's Petition, Defendants state the notices of appeal speak for themselves and deny Plaintiff's characterization of the same. Defendants are without sufficient information to admit or deny the remaining allegations in Paragraph 90 of Plaintiff's Petition and, therefore, deny the same.**

91. As "REASON FOR APPEAL," Plaintiff marked "political activity," "was otherwise without cause," "retaliation" and attached the four pages setting forth additional facts and circumstances surrounding Defendants' actions against Plaintiff and the unlawful nature of the actions culminating in his September 24, 2018 discharge.

**ANSWER:** **Responding to the allegations in Paragraph 91 of Plaintiff's Petition, Defendants state the notice of appeal speaks for itself and deny Plaintiff's characterization**

**of the same.**

92. On October 17, 2018, Plaintiff also requested documents of Defendant Jackson County pursuant to the Missouri Sunshine Laws. Defendant Jackson County responded through Defendant Nixon's office on October 22, 2018, that it "require[d] a deposit of $1,320.00 prior to beginning work on this request." There was no justification for this exorbitant amount demanded. In addition, and despite payment of $643 by Plaintiff for documents, Defendant Jackson County has not made a full production of the documents, including the Molly Report that was promised to Plaintiff as part of his suspension, as of the filing of this lawsuit.

**ANSWER**: **Defendants admit Plaintiff requested documents from Jackson County. Defendants further admit that County Counselor Nixon's office represented that it "require[d] a deposit of $1,320 prior to beginning work on this request." Defendants admit that Plaintiff has made a $643 payment for documents. Defendants deny the remaining allegations or implications in Paragraph 92 of Plaintiff's Petition.**

93. The $1,320 ransom was unauthorized under the Missouri Sunshine Laws and a sham to try to hide the documentation associated with the illegal acts against Plaintiff.

**ANSWER**: **Defendants deny that the $1,320 deposit request was "ransom," a "sham," or that it was made in an effort to "hide documentation." Defendants also deny committing any illegal acts against Plaintiff. The remaining allegations in Paragraph 93 state legal conclusions to which no response is required. To the extent Paragraph 93 includes any additional factual averments to which a response is required, Defendants deny the allegations in Paragraph 93 of Plaintiff's Petition.**

94. A hearing was finally set for November 30, 2018, well more than 21 days after Plaintiff's suspension on January 10 and more than 21 days after Plaintiff's discharge on

September 24, in violation of Defendant Jackson County Personnel Rules.

**ANSWER**: **Responding to the allegations in Paragraph 94 of Plaintiff's Petition, Defendants admit a hearing was set for November 30, 2018 and that the final hearing date set was more than 21 days after September 24, 2018. Defendants deny that this was the first or only hearing date set related to Plaintiff's September 26, 2018 request for appeal. Responding to the remaining allegations related to Defendant Jackson County's Personnel Rules, Defendant states the Rules speak for themselves and deny Plaintiff's characterization of the same.**

95.     In response, Defendant Jackson County filed a Motion in Limine with the Jackson County Merit System Commission, which, as noted above is created by Jackson County Charter, is appointed by Defendant County Executive White and is tended to by Defendant Dumovich as its secretary. In its Motion, Defendant Jackson County "move[d] this Commission for an order to bar Appellant from presenting any evidence or testimony at the Merit Hearing beyond discrimination in the choice of employees."

**ANSWER**: **Responding to the allegations in Paragraph 95 of Plaintiff's Petition, Defendants admit Defendant Jackson County properly filed a Motion in Limine with Jackson County Merit System Commission, that the County Charter created the Merit Commission, that members are appointed by Defendant White, and that Defendant Dumovich acts as its secretary. Defendant also admits Defendant Jackson County's motion "move[d] this Commission for an order to bar Appellant from presenting any evidence or testimony at the Merit Hearing beyond discrimination in the choice of employees."**

96.     As with the $1,320 ransom for documents concerning COMBAT and the actions taken against Plaintiff, the attempts to limit Plaintiff's Merit System Commission hearing to

evidence concerning the qualifications of Cheryl Colter highlights the concerted effort that Defendants Jackson County, White and Dumovich were taking to cloud and cover-up their illegal actions against Plaintiff and the wrongdoings of the White Administration in 2018.

**ANSWER**: **Defendants deny the allegations in Paragraph 96 of Plaintiff's Petition.**

97.    Plaintiff opposed the Motion, arguing that all of the facts and circumstances surrounding the suspension and discharge actions against him be heard, as outlined in his Appeal Form, including testimony from adverse witnesses including witness Defendants White, Stoll and Dumovich.

**ANSWER**:    **Defendants admit Plaintiff opposed the motion.  Further responding to the allegations in Paragraph 97 of Plaintiff's Petition, Defendants state Plaintiff's filed opposition to Defendant Jackson County's Motion in Limine speaks for itself and deny Plaintiff's characterization of the same.**

98.    Under Rule 4 of the Rules of Procedure Before the Merit System Commission of Jackson County, "The Commission *shall follow* in each case that procedure which it believes *will best develop all of the pertinent facts* with respect to the issues without regard to common law or statutory rules of evidence and other technical rules of procedure." (emphasis added).

**ANSWER**:    **Rule 4 of the Rules of Procedure Before the Merit System of Jackson County states, "The Commission shall follow in each case that procedure which it believes will best develop all of the pertinent facts with respect to the issues without regard to common law or statutory rules of evidence and other technical rules of procedure."   Defendants deny any remaining allegations or implications in Paragraph 98 of Plaintiff's Petition.**

99.    Despite a clear mandate that Plaintiff be allowed to develop all pertinent facts concerning the adverse actions taken against him, the Jackson County Merit System Commission

*dismissed* Plaintiff's appeal in its entirety, refusing to hear any evidence about the actions taken against Plaintiff.

**ANSWER**:  **Defendants admit the Jackson County Merit System Commission properly dismissed Plaintiff's appeal.  Defendants deny any remaining allegations or implications in Paragraph 99 of Plaintiff's Petition.**

100.    As a result of the actions taken against Plaintiff as described herein, Plaintiff has suffered lost wages, emotional distress, embarrassment and humiliation, as well as damage to his professional reputation.

**ANSWER**:  **Defendants deny the allegations in Paragraph 100 of Plaintiff's Petition.**

101.    Defendants conspired with each other to deprive Plaintiff of his rights under state and federal laws and to cause Plaintiff damage.

**ANSWER**:  **Defendants deny the allegations in Paragraph 101 of Plaintiff's Petition.**

102.    The actions of all Defendants described herein were taken under color of state law and their actions constitute state action.

**ANSWER**:  **The allegations in Paragraph 102 of Plaintiff's Petition state legal conclusions to which no response is required.  To the extent Paragraph 102 states any factual averments to which a response is required, Defendants deny the allegations in Paragraph 102 of Plaintiff's Petition.**

103.    The actions of Defendants sued in their individual capacities were taken with a knowing or reckless disregard for Plaintiff's rights and punitive damages are due to be awarded to punish Defendants and deter similar conduct in the future.

**ANSWER**:  Defendants deny that any of the individual defendants acted with knowing or reckless disregard for Plaintiff's rights.  The remaining allegations in Paragraph 103 state legal conclusions to which no response is required.  To the extent Paragraph 103 of Plaintiff's Petition states any additional factual averments to which a response is required, Defendants deny the remaining allegations in Paragraph 103 of Plaintiff's Petition.

104.  Punitive damages are appropriate in this case to punish Defendants' malicious intent and reckless disregard against Plaintiff and to deter Defendants and others from future violations of state and federal laws and disconnect from policies and procedures in place to protect whistleblowers who stand-up against illegal activity like Plaintiff.

**ANSWER**:  The allegations in Paragraph 104 of Plaintiff's Petition state legal conclusions to which no response is required.  To the extent Paragraph 104 of Plaintiff's Petition states any factual averments to which a response is required, Defendants deny the allegations in Paragraph 104 of Plaintiff's Petition.

<u>**COUNT I:**</u>
**<u>Violation of the Missouri Whistleblower's Protection Act,</u>**
**<u>Mo, Rev. Stat. §285.575, et seq.</u>**
**(Against Defendant Jackson County)**

105.  Plaintiff incorporates the above paragraphs by reference.

**ANSWER**:  Defendants incorporate by reference all previous paragraphs and answers, and those that follow, by reference, as if fully set forth in these allegations and answers.

106.  Under the Missouri Whistleblower Protection Act, it is an unlawful employment practice for an employer to discharge an individual defined as a protected person because of that person's status as a protected person.

38

**ANSWER**:   The allegations in Paragraph 106 of Plaintiff's Petition state legal conclusions to which no response is required.   To the extent Paragraph 106 of Plaintiff's Petition includes any factual averments to which a response is required, Defendants deny the allegations and implications in Paragraph 106 of Plaintiff's Petition.   Further responding to the allegations in Paragraph 106, Defendants deny that the provisions of the Missouri Whistleblower Protection Act apply to governmental bodies like Jackson County, Missouri, or its employees and agents.

107.    Under the Missouri Whistleblower Protection Act, Plaintiff was and is a protected person in that, at all relevant times, he was an employee of an employer who reported to the proper authorities an unlawful act of his or her employer, reported serious misconduct of the employer that violated a clear mandate of public policy as articulated in a constitutional provision, statute, or regulation promulgated under statute, and/or is an employee of an employer who refused to carry out a directive issued by his employer that if completed would have been a violation of the law.

**ANSWER**:   The allegations in Paragraph 107 of Plaintiff's Petition state legal conclusions to which no response is required.   To the extent Paragraph 106 of Plaintiff's Petition includes any factual averments to which a response is required, Defendants deny the allegations and implications in Paragraph 107 of Plaintiff's Petition.   Further responding to the allegations in Paragraph 107, Defendants deny that the provisions of the Missouri Whistleblower Protection Act apply to governmental bodies like Jackson County, Missouri, or its employees and agents.

108.    Plaintiff's protected classification actually played a role in the adverse decisions and actions against Plaintiff and had a determinative influence on the adverse decision or action.

**ANSWER**:   Defendants deny the allegations or implications in Paragraph 108 of

Plaintiff's Petition.

109. As a result of Defendant Jackson County's adverse decisions and actions against Plaintiff, Plaintiff has suffered damages.

**ANSWER**: **Defendants deny the allegations or implications in Paragraph 109 of Plaintiff's Petition.**

110. Defendant Jackson County's conduct against Plaintiff was outrageous because of its evil motive or reckless indifference to the rights of others.

**ANSWER**: **Defendants deny the allegations or implications in Paragraph 110 of Plaintiff's Petition.**

WHEREFORE, for all of the foregoing reasons, Plaintiff seeks a judgment for his actual damages and the highest amount of penalties, back pay, liquidated and punitive damages, costs and reasonable attorneys' fees allowed under the Missouri Whistleblower Protection Act, pre-judgment and post-judgment interest and any other relief the Court deems just and proper against Defendant Jackson County.

**ANSWER**: **The allegations in this unnumbered paragraph are prayers for relief requiring neither an admission nor a denial, but to the extent such prayers in any way imply that Defendants engaged in any wrongful or illegal acts, or that Plaintiff is entitled to the relief he seeks, such implications are expressly denied.**

<u>**COUNT II:**</u>
<u>**Breach of Contract**</u>
**(Against Defendant Jackson County)**

111. Plaintiff incorporates the above paragraphs by reference.

**ANSWER**: **Defendants incorporate by reference all previous paragraphs and answers, and those that follow, by reference, as if fully set forth in these allegations and**

**answers.**

112.    As set forth above, there existed a contract between Plaintiff and Defendant Jackson County, the terms of which were set forth in the Jackson County Personnel Rules and Merit System Rules.

**ANSWER**:    **The allegations in Paragraph 112 of Plaintiff's Petition state legal conclusions to which no response is required.   To the extent Paragraph 112 includes any factual averments to which a response is required, Defendants deny the factual averments in Paragraph 112 of Plaintiff's Petition.**

113.    Plaintiff performed or tendered performance pursuant to the contract.

**ANSWER**:    **The allegations in Paragraph 113 of Plaintiff's Petition state legal conclusions to which no response is required.   To the extent Paragraph 113 includes any factual averments to which a response is required, Defendants deny the factual averments in Paragraph 113 of Plaintiff's Petition.**

114.    Defendant Jackson County breached the contract in the following, separate ways: (1) by indefinitely suspending Plaintiff in January 2018 after Plaintiff refused to make illegal COMBAT payments; (2) by failing and refusing to provide Plaintiff with a Merit System Commission hearing within 21 days after indefinitely suspending him in January 2018;  (3) by unlawfully terminating Plaintiff in September 2018; and (4) by failing and refusing to provide Plaintiff with a Merit System Commission hearing within 21 days after unlawfully terminating him.

**ANSWER**:    **Defendants deny that Plaintiff was suspended in January 2018 or terminated in September 2018.   The remaining allegations in Paragraph 114 of Plaintiff's Petition state legal conclusions to which no response is required.   To the extent Paragraph**

114 includes any factual averments to which a response is required, Defendants deny the factual averments in Paragraph 114 of Plaintiff's Petition.

115.     As a result of Defendant Jackson County's breach of contract, Plaintiff has been damaged.

**ANSWER**:     **Defendants deny the allegations in Paragraph 115 of Plaintiff's Petition.**

WHEREFORE, for all of the foregoing reasons, Plaintiff seeks a judgment for his actual damages, pre-judgment and post-judgment interest, and any other relief the Court deems just and proper against Defendant Jackson County.

**ANSWER**:     **The allegations in this unnumbered paragraph are prayers for relief requiring neither an admission nor a denial, but to the extent such prayers in any way imply that Defendants engaged in any wrongful or illegal acts, or that Plaintiff is entitled to the relief he seeks, such implications are expressly denied.**

<u>COUNT III:</u>
<u>Breach of Implied Covenant of Good Faith and Fair Dealing</u>
**(Against Defendant Jackson County)**

116.     Plaintiff incorporates the above paragraphs by reference.

**ANSWER**:     **Defendants incorporate by reference all previous paragraphs and answers, and those that follow, by reference, as if fully set forth in these allegations and answers.**

117.     Under Missouri law, every contract includes an implied covenant of good faith and fair dealing.

**ANSWER**:     **The allegations in Paragraph 117 of Plaintiff's Petition state legal conclusions to which no response is required.   To the extent Paragraph 117 includes any**

factual averments to which a response is required, Defendants deny the factual averments in Paragraph 117 of Plaintiff's Petition.

118. The implied duty of one party to cooperate with the other party to a contract to enable performance and achievement of the expected benefits is an enforceable contract right.

**ANSWER**: **The allegations in Paragraph 118 of Plaintiff's Petition state legal conclusions to which no response is required. To the extent Paragraph 118 includes any factual averments to which a response is required, Defendants deny the factual averments in Paragraph 118 of Plaintiff's Petition.**

119. A party breaches the covenant of good faith and fair dealing if it exercises a judgment conferred by the express terms of the agreement in a manner that evades the spirit of the agreement and denies the other party the expected benefit of the agreement.

**ANSWER**: **The allegations in Paragraph 119 of Plaintiff's Petition state legal conclusions to which no response is required. To the extent Paragraph 119 includes any factual averments to which a response is required, Defendants deny the factual averments in Paragraph 119 of Plaintiff's Petition.**

120. The purpose of the cause of action of breach of good faith and fair dealing is to prevent opportunistic behavior where one party exploits changing economic conditions to the detriment of the other party.

**ANSWER**: **The allegations in Paragraph 120 of Plaintiff's Petition state legal conclusions to which no response is required. To the extent Paragraph 120 includes any factual averments to which a response is required, Defendants deny the factual averments in Paragraph 120 of Plaintiff's Petition.**

121. Defendant Jackson County's suspension of Plaintiff for nine months and ensuing

attempts to perpetuate and then cover up its illegal COMBAT payments with taxpayer money, leading up to and including its termination of Plaintiff, highlight its opportunistic behavior where it exploited Plaintiff's changing economic conditions to the detriment of Plaintiff.

**ANSWER**: **Defendants deny the allegations in Paragraph 121 of Plaintiff's Petition.**

122. As outlined above, Defendant Jackson County breached its implied obligations of good faith and fair dealing towards Plaintiff in the following, separate ways: (1) by indefinitely suspending Plaintiff in January 2018 after Plaintiff refused to make illegal COMBAT payments; (2) by failing and refusing to provide Plaintiff with a Merit System Commission hearing within 21 days after indefinitely suspending him in January 2018; (3) by unlawfully terminating Plaintiff in September 2018; and (4) by failing and refusing to provide Plaintiff with a Merit System Commission hearing within 21 days after unlawfully terminating him.

**ANSWER**: **Defendants deny that Plaintiff was suspended in January 2018 or terminated in September 2018. The remaining allegations in Paragraph 122 of Plaintiff's Petition state legal conclusions to which no response is required. To the extent Paragraph 122 includes any factual averments to which a response is required, Defendants deny the factual averments in Paragraph 122 of Plaintiff's Petition.**

WHEREFORE, for all of the foregoing reasons, Plaintiff seeks a judgment for his actual damages, pre-judgment and post-judgment interest, and any other relief the Court deems just and proper against Defendant Jackson County.

**ANSWER**: **The allegations in this unnumbered paragraph are prayers for relief requiring neither an admission nor a denial, but to the extent such prayers in any way imply that Defendants engaged in any wrongful or illegal acts, or that Plaintiff is entitled to the**

relief he seeks, such implications are expressly denied.

**COUNT IV:**
**Defamation**
**(Against Defendant Jackson County and Defendant Stoll)**

123.     Plaintiff incorporates the above paragraphs by reference.

**ANSWER**:    **Defendants incorporate by reference all previous paragraphs and answers, and those that follow, by reference, as if fully set forth in these allegations and answers.**

124.     Defendants Jackson County and Stoll published a defamatory statements on January 11, 2018, in the *Kansas City Star*, namely, that Plaintiff, (1) was under investigation for being "unwilling to perform the essential functions of [his] position, which" (2) "could result in a violation of federal law."

**ANSWER**:    **Responding to the allegations in Paragraph 124 of Plaintiff's Petition, Defendants state the January 11, 2018 *Kansas City Star* article speaks for itself and Defendants deny Plaintiff's characterization of the same.  Any remaining allegations or implications in Paragraph 124 of Plaintiff's Petition state legal conclusions to which no response is required.  To the extent Paragraph 124 of Plaintiff's Petition states any additional factual averments to which a response is required, Defendants deny the remaining factual averments or implications in Paragraph 124 of Plaintiff's Petition.**

125.     The defamatory statements of Defendants Jackson County and Stoll identified Plaintiff by name and by his position as "Scott Jacoby, the deputy director of finance[.]".

**ANSWER**:    **Responding to the allegations in Paragraph 125 of Plaintiff's Petition, Defendants state the January 11, 2018 *Kansas City Star* article speaks for itself and Defendants deny Plaintiff's characterization of the same.  Any remaining allegations or**

45

implications in Paragraph 124 of Plaintiff's Petition state legal conclusions to which no response is required. To the extent Paragraph 125 of Plaintiff's Petition states any additional factual averments to which a response is required, Defendants deny the remaining factual averments or implications in Paragraph 125 of Plaintiff's Petition.

126. The defamatory statements were both false.

**ANSWER**: Defendants are without sufficient information to admit or deny which vague and ambiguous "statements" Plaintiff is referring to in Paragraph 126 of Plaintiff's Petition and, therefore, deny the same. Further responding to the allegations in Paragraph 126 of Plaintiff's Petition, Defendants state any remaining allegations assert legal conclusions to which no response is required. To the extent Paragraph 126 includes any additional factual averments to which a response is required, Defendants deny the remaining allegations or implications in Paragraph 126 of Plaintiff's Petition.

127. Defendants Jackson County and Stoll published the defamatory statements with fault and/or with malicious intent to harm Plaintiff and/or in reckless disregard for the rights of Plaintiff.

**ANSWER**: Defendants deny that Jackson County or Stoll had any malicious intent to harm Plaintiff or that they operated in reckless disregard for the rights of Plaintiff. Further responding to any remaining allegations in Paragraph 127 of Plaintiff's Petition, Defendants state the remaining allegations or implications in Paragraph 127 of Plaintiff's Petition state legal conclusions to which no response is required. To the extent Paragraph 127 of Plaintiff's Petition includes any additional factual averments to which a response is required, Defendants deny any remaining factual averments or implications in Paragraph 127 of Plaintiff's Petition.

128.     As a result of the defamatory statements of Defendants Jackson County and Stoll, Plaintiff's reputation has been damaged.

**ANSWER**:     **Defendants deny the allegations in Paragraph 128 of Plaintiff's Petition.**

WHEREFORE, for all of the foregoing reasons, Plaintiff seeks a judgment for his actual damages, punitive damages, pre-judgment and post-judgment interest and any other relief the Court deems just and proper against Defendants Jackson County and Stoll.

**ANSWER**:     **The allegations in this unnumbered paragraph are prayers for relief requiring neither an admission nor a denial, but to the extent such prayers in any way imply that Defendants engaged in any wrongful or illegal acts, or that Plaintiff is entitled to the relief he seeks, such implications are expressly denied.**

<u>**COUNT V:**</u>
<u>**Violations of Missouri Sunshine Act, Mo. Rev. Stat. §610.010,** *et seq.*</u>
**(Against Defendant Jackson County)**

129.     Plaintiff incorporates the above paragraphs by reference.

**ANSWER**:     **Defendants incorporate by reference all previous paragraphs and answers, and those that follow, by reference, as if fully set forth in these allegations and answers.**

130.     Defendant Jackson County is a "public governmental body" as that term is defined under the Missouri Sunshine Act, specifically, Mo. Rev. Stat. §610.010(4).

**ANSWER**:     **The allegations in Paragraph 130 of Plaintiff's Petition state legal conclusions to which no response is required.   To the extent Paragraph 130 includes any factual averments to which a response is required, Defendants admit the factual averments in Paragraph 130 of Plaintiff's Petition.**

131.     Defendant Jackson County maintains "public records," as that term is defined under

47

Mo. Rev. Stat. §610.010(6), including all records, "whether written or electronically stored, retained by or of any public governmental body including any report, survey, memorandum, or other document or study prepared for the public governmental body by a consultant or other professional service paid for in whole or in part by public funds, including records created or maintained by private contractors under an agreement with a public governmental body or on behalf of a public governmental body[.]"

**ANSWER**: **The allegations in Paragraph 131 of Plaintiff's Petition state legal conclusions to which no responses are required. To the extent Paragraph 131 of Plaintiff's Petition includes any factual averments to which a response is required, Defendants deny such allegations.**

132. Under the Missouri Sunshine Act, it "is the public policy of this state that meetings, records….actions and deliberations of public governmental bodies be open to the public[.]"

**ANSWER**: **The allegations in Paragraph 132 of Plaintiff's Petition state legal conclusions to which no response is required. To the extent Paragraph 132 includes any factual averments to which a response is required, Defendants admit the factual averments in Paragraph 132 of Plaintiff's Petition.**

133. Under the Missouri Sunshine Act, "all public records of public governmental bodies shall be open to the public for inspection and copying as set forth in sections 610.023-610.026[.]"

**ANSWER**: **The allegations in Paragraph 133 of Plaintiff's Petition state legal conclusions to which no response is required. To the extent Paragraph 133 includes any factual averments to which a response is required, Defendants admit the factual averments in Paragraph 133 of Plaintiff's Petition.**

134. Under Mo. Rev. Stat. § 610.023(3), "Each request for access to a public record shall

be acted upon as soon as possible, but in no event later than the end of the third business day following the date the request is received by the custodian of records of a public governmental body….If access to the public record is not granted immediately, the custodian shall give a detailed explanation of the cause for further delay and the place and earliest time and date that the record will be available for inspection." The statute further provides that "[t]his period for document production may exceed three days or reasonable cause."

**ANSWER**:  **The allegations in Paragraph 134 of Plaintiff's Petition state legal conclusions to which no response is required.  To the extent Paragraph 134 includes any factual averments to which a response is required, Defendants admit the factual averments in Paragraph 134 of Plaintiff's Petition.**

135.    Pursuant to the Missouri Sunshine Act, Plaintiff requested documents of Defendant Jackson County on or about September 13, 2018, October 17, 2018, November 13, 2018 and November 20, 2018. The November 13 request was duplicative of the October 17 request, other than that the November 13 request was sent to the respective custodial departments, *i.e.,* Budget, Human Resources, Information Technology and Finance, in response to the Jackson's County Counselor's assertions on September 17 and October 17 that "the Jackson County Counselor's Office is not the custodian of many of the records [that Plaintiff] seek[s]."

**ANSWER**:  **Defendants admit that Plaintiff requested documents of Defendant Jackson County on or about September 13, 2018, October 17, 2018, November 13, 2018 and November 20, 2018.  Regarding the specific content of these requests and Defendant Jackson County, Missouri's responses to the same, Defendants state the requests and responses speak for themselves and deny Plaintiff's characterization of the same.**

136.    As noted above, on October 22, the Jackson County Counselor's Office informed

Plaintiff that it "require[d] a deposit of $1,320.00 prior to beginning work on this request."

**ANSWER**:   **Defendants admit that the Jackson County Counselor's Office informed Plaintiff that it "require[d] a deposit of $1,320.00 prior to beginning work on this request." Defendants deny any remaining allegations or implications in Paragraph 136 of Plaintiff's Petition.**

137.   When Plaintiff objected to the exorbitant amount, Jackson County revised its demand to $162, $186 and $295 for a total of $643, which Plaintiff paid immediately upon notice from Jackson County that a payment was due (even though Jackson County did not specify the exact amount due).

**ANSWER**:   **Regarding the specific content of Plaintiff's requests and Defendant Jackson County, Missouri's responses to the same, Defendants state the requests and responses speak for themselves and deny Plaintiff's characterization of the same.**

138.   Despite Plaintiff's payment of $643, he has yet to receive any documents from the Budget Department or the Molloy Report, which he was also promised in connection with his suspension.

**ANSWER**:   **Defendants admit that Plaintiff issued a payment of $643 for documents responsive to Plaintiff's document requests and that he has not been provided a copy of the Molloy Report. Defendants deny any remaining allegations or implications in Paragraph 138 of Plaintiff's Petition.**

139.   Upon information and belief, the documents Plaintiff requested from the Budget Department were ready on or about November 15, 2018, but Jackson County has failed to provide the Budget documents to Plaintiff.

**ANSWER**:   **Defendants deny the allegations in Paragraph 139 of Plaintiff's**

Petition.

140.    In addition, upon information and belief, Jackson County has improperly redacted several documents in the production it has made.

**ANSWER**:    **The allegations in Paragraph 140 of Plaintiff's Petition state legal conclusions to which no response is required.   To the extent Paragraph 140 includes any factual averments to which a response is required, Defendants deny the factual averments in Paragraph 140 of Plaintiff's Petition.**

141.    In addition, Jackson County has failed to make production of any documents requested on or about November 20, 2018, namely all documents concerning retrieval efforts and associated costs with Plaintiff's three previous Sunshine Requests in September and October and all communications with the Merit System Commission and/or Merit System Commission Ronald Jurgeson regarding Plaintiff and/or his claims from January 10, 2018 to present.

**ANSWER**:    **Defendants deny the allegations in Paragraph 141 of Plaintiff's Petition.**

142.    In failing and refusing to provide Plaintiff with the requested public documents in a timely manner and at a reasonable cost, Defendant Jackson County has purposely violated §§ 610.010-610.026 and is subject to the highest possible penalties.

**ANSWER**:    **The allegations in Paragraph 142 of Plaintiff's Petition state legal conclusions to which no response is required.   To the extent Paragraph 142 includes any factual averments to which a response is required, Defendants deny the factual averments in Paragraph 142 of Plaintiff's Petition.**

WHEREFORE, for all of the foregoing reasons, Plaintiff seeks a judgment for his actual damages, costs and reasonable attorneys' fees allowed under the Missouri Sunshine Act, pre-

judgment and post-judgment interest and any other relief the Court deems just and proper against Defendant Jackson County.

**ANSWER**: **The allegations in this unnumbered paragraph are prayers for relief requiring neither an admission nor a denial, but to the extent such prayers in any way imply that Defendants engaged in any wrongful or illegal acts, or that Plaintiff is entitled to the relief he seeks, such implications are expressly denied.**

**COUNT VI:**
**Violations of 42 U.S.C. §1983: Procedural Due Process.**
**(Against All Defendants)**

143.    Plaintiff incorporates the above paragraphs by reference.

**ANSWER**: **Defendants incorporate by reference all previous paragraphs and answers, and those that follow, by reference, as if fully set forth in these allegations and answers.**

144.    Under 42 U.S.C. § 1983 and the Fourteenth Amendment, persons who act under color of state law cannot deprive any citizen of the United States of life, liberty or property without due process of law.

**ANSWER**: **The allegations in Paragraph 144 of Plaintiff's Petition state legal conclusions to which no response is required. To the extent Paragraph 144 includes any factual averments to which a response is required, Defendants deny the factual averments in Paragraph 144 of Plaintiff's Petition.**

145.    Plaintiff had a property right in his continued employment pursuant to the Jackson County Personnel Rules, Merit System as well as pursuant to established rules and understandings at Jackson County.

**ANSWER**: **The allegations in Paragraph 145 of Plaintiff's Petition state legal**

conclusions to which no response is required. To the extent Paragraph 145 includes any factual averments to which a response is required, Defendants deny the factual averments in Paragraph 145 of Plaintiff's Petition.

146. In addition to protections promised to Plaintiff in the Jackson County Personnel Rules, Merit System and established rules and understandings, an employee with a protected property interest in his public employment must be given an opportunity for hearing before deprivation of the property or liberty interest.

**ANSWER**: **The allegations in Paragraph 146 of Plaintiff's Petition state legal conclusions to which no response is required. To the extent Paragraph 146 includes any factual averments to which a response is required, Defendants deny the factual averments in Paragraph 146 of Plaintiff's Petition.**

147. As outlined above, all Defendants deprived Plaintiff of both continued employment and an opportunity for hearing.

**ANSWER**: **Defendants deny the allegations in Paragraph 147 of Plaintiff's Petition.**

148. In addition to Plaintiff's cognizable interest in his continued employment, Plaintiff also has employment-related liberty interests that Defendants Jackson County and Stoll, and, upon information and belief, Defendant Miller, infringed.

**ANSWER**: **The allegations in Paragraph 148 of Plaintiff's Petition state legal conclusions to which no response is required. To the extent Paragraph 148 includes any factual averments to which a response is required, Defendants deny the factual averments in Paragraph 148 of Plaintiff's Petition.**

149. When Defendant Jackson County and Defendant Stoll, and, upon information and

belief Defendant Miller, created and disseminated a false and defamatory impression about Plaintiff in connection with his termination when they published false statements about Plaintiff refusing to perform the essential duties of his job and violating federal law in the *Kansas City Star,* they deprived Plaintiff of a protected liberty interest.

**ANSWER**:     **Defendants deny that Defendant Jackson County, Defendant Stoll, and Defendant Miller "created and disseminated a false and/or defamatory impression about Plaintiff in connection with his termination' or that they "published" false statements about Plaintiff.  The remaining allegations in Paragraph 149 of Plaintiff's Petition state legal conclusions to which no response is required.  To the extent Paragraph 149 includes any factual averments to which a response is required, Defendants deny the factual averments in Paragraph 149 of Plaintiff's Petition.**

150.    All Defendants acted under color of state law and their actions constitute state action.

**ANSWER**:     **The allegations in Paragraph 150 of Plaintiff's Petition state legal conclusions to which no response is required.  To the extent Paragraph 150 includes any factual averments to which a response is required, Defendants deny the factual averments in Paragraph 150 of Plaintiff's Petition.**

151.    The individual Defendants were at the highest levels of the Administration when they inflicted injury on Plaintiff.

**ANSWER**:     **Defendants deny that Defendants "inflicted injury on Plaintiff." Defendant is without sufficient information to admit or deny the remaining vague and ambiguous allegations or implications in Paragraph 151 of Plaintiff's Petition and, therefore, deny the same.**

152.     Defendant Jackson County and Defendants White, Stoll, Trosen, Dumovich and Miller, in their official and individual capacities, violated Plaintiff's constitutionally protected due process rights by, among other things, indefinitely suspending Plaintiff, creating and disseminating a false and defamatory impression about Plaintiff, terminating Plaintiff and failing and refusing to give Plaintiff an opportunity for hearing.

**ANSWER**:     **The allegations in Paragraph 152 of Plaintiff's Petition state legal conclusions to which no response is required.   To the extent Paragraph 152 includes any factual averments to which a response is required, Defendants deny the factual averments in Paragraph 152 of Plaintiff's Petition.**

153.     Section 1983 of Title 42 provides Plaintiff with a remedy at law and equity for the violation of his constitutional rights by persons acting under color of state law.

**ANSWER**:     **The allegations in Paragraph 153 of Plaintiff's Petition state legal conclusions to which no response is required.   To the extent Paragraph 153 includes any factual averments to which a response is required, Defendants deny the factual averments in Paragraph 153 of Plaintiff's Petition.**

WHEREFORE, Plaintiff prays that the Court declare the actions to indefinitely suspend Plaintiff and terminate Plaintiff, to defame Plaintiff and to deprive Plaintiff of an opportunity for hearing to be in violation of his constitutional rights; to enjoin Defendant Jackson County, White, Stoll, Trosen, Dumovich and Miller, in their official capacities from further violations; and to reinstate Plaintiff to his position with Jackson County.   Plaintiff also prays that the Court award him damages, including punitive damages, against Defendant Jackson County and Defendants White, Stoll, Trosen, Dumovich and Miller, in their individual capacities, and award Plaintiff costs and reasonable attorneys' fees pursuant to 42 U.S.C. § 1988 and pre-judgment and post-judgment

interest against all Defendants in all of their capacities, and any other relief the Court deems just and proper.

**ANSWER**: **The allegations in this unnumbered paragraph are prayers for relief requiring neither an admission nor a denial, but to the extent such prayers in any way imply that Defendants engaged in any wrongful or illegal acts, or that Plaintiff is entitled to the relief he seeks, such implications are expressly denied.**

## COUNT VII:
### Violations of 42 U.S.C. §1983: Substantive Due Process
### (Against All Defendants)

154.    Plaintiff incorporates the above paragraphs by reference.

**ANSWER**: **Defendants incorporate by reference all previous paragraphs and answers, and those that follow, by reference, as if fully set forth in these allegations and answers.**

155.    Under 42 U.S.C. § 1983 and the Fourteenth Amendment, persons who act under color of state law cannot deprive any citizen of the United States of life, liberty or property.

**ANSWER**: **The allegations in Paragraph 155 of Plaintiff's Petition state legal conclusions to which no response is required.  To the extent Paragraph 155 includes any factual averments to which a response is required, Defendants deny the factual averments in Paragraph 155 of Plaintiff's Petition.**

156.    Substantive due process secures Plaintiff from the arbitrary exercise of the powers of government, unrestrained by the established principles of private rights and distributive justice.

**ANSWER**: **The allegations in Paragraph 156 of Plaintiff's Petition state legal conclusions to which no response is required.  To the extent Paragraph 156 includes any factual averments to which a response is required, Defendants deny the factual averments in**

Paragraph 156 of Plaintiff's Petition.

157.     As set forth above, Defendants exercised governmental power arbitrarily and oppressively against Plaintiff when they indefinitely suspended and then terminated him when Plaintiff refused to violate the law and when they refused to give Plaintiff a hearing.

**ANSWER:     Defendants deny they suspended Plaintiff or that they terminated Plaintiff.  The remaining allegations in Paragraph 157 of Plaintiff's Petition state legal conclusions to which no response is required.  To the extent Paragraph 157 includes any factual averments to which a response is required, Defendants deny the factual averments in Paragraph 157 of Plaintiff's Petition.**

158.     Defendants' actions against Plaintiff were arbitrary, egregious and oppressive. They were also based on unfounded charges of dishonesty or immorality against Plaintiff that seriously damaged Plaintiff's standing or association in the community and foreclosed Plaintiff's freedom to take advantage of future employment opportunities.

**ANSWER:     Defendants deny the allegations in Paragraph 158 of Plaintiff's Petition.**

WHEREFORE, Plaintiff prays that the Court declare the actions to indefinitely suspend Plaintiff and terminate Plaintiff, to deprive Plaintiff of a hearing on either of these actions and to bring unfounded charges of dishonesty or immorality against Plaintiff to be in violation of his constitutional rights; to enjoin Defendant Jackson County, White, Stoll, Trosen, Dumovich and Miller, in their official capacities from further violations; and to reinstate Plaintiff to his position with Jackson County. Plaintiff also prays that the Court award him damages, including punitive damages, against Defendant Jackson County and Defendants White, Stoll, Trosen, Dumovich and Miller, in their individual capacities, and award Plaintiff costs and reasonable attorneys' fees pursuant to 42 U.S.C. § 1988 and pre-judgment and post-judgment interest against all

Defendants in all of their capacities, and any other relief the Court deems just and proper.

**ANSWER**: **The allegations in this unnumbered paragraph are prayers for relief requiring neither an admission nor a denial, but to the extent such prayers in any way imply that Defendants engaged in any wrongful or illegal acts, or that Plaintiff is entitled to the relief he seeks, such implications are expressly denied.**

**COUNT VIII:**
**Violations of 42 U.S.C. §1983: First Amendment Free Speech**
**(Against All Defendants)**

159.    Plaintiff incorporates the above paragraphs by reference.

**ANSWER**: **Defendants incorporate by reference all previous paragraphs and answers, and those that follow, by reference, as if fully set forth in these allegations and answers.**

160.    In expressing his good faith and reasonable concerns about the illegal use of COMBAT taxpayer trust funds in violation of Ordinance 5061, plaintiff was engaged in speech on matters of public concern in his role as citizen. Plaintiff's speech on this issue was protected under the First and Fourteenth Amendments of the United States Constitution.

**ANSWER**: **The allegations in Paragraph 160 of Plaintiff's Petition state legal conclusions to which no response is required. To the extent Paragraph 160 includes any factual averments to which a response is required, Defendants deny the factual averments in Paragraph 160 of Plaintiff's Petition.**

161.    Plaintiff's interest in communicating these matters of public concern outweighed Defendants' interest in promoting efficiency of the public service they were performing, if any.

**ANSWER**: **The allegations in Paragraph 161 of Plaintiff's Petition state legal conclusions to which no response is required. To the extent Paragraph 161 includes any**

factual averments to which a response is required, Defendants deny the factual averments in Paragraph 161 of Plaintiff's Petition.

162.    Plaintiff's termination was motivated by his protected speech.

**ANSWER**:    **Defendants deny the allegations in Paragraph 162 of Plaintiff's Petition.**

163.    All Defendants knew about plaintiff's protected speech.

**ANSWER**:    **The allegations in Paragraph 163 of Plaintiff's Petition state legal conclusions to which no response is required.  To the extent Paragraph 163 includes any factual averments to which a response is required, Defendants deny the factual averments in Paragraph 163 of Plaintiff's Petition.**

164.    Defendant Jackson County and Defendants White, Stoll, Trosen, Dumovich and Miller, in their official and individual capacities, retaliated against plaintiff for exercising his constitutional right to free speech when they retaliated against Plaintiff for exercising his right to free speech by indefinitely suspending Plaintiff, defaming Plaintiff, terminating Plaintiff and depriving Plaintiff of a hearing.

**ANSWER**:    **Defendants deny the allegations or implications in Paragraph 164 of Plaintiff's Petition.**

165.    All Defendants acted under color of state law and their actions constitute state action.

**ANSWER**:    **The allegations in Paragraph 165 of Plaintiff's Petition state legal conclusions to which no response is required.  To the extent Paragraph 165 includes any factual averments to which a response is required, Defendants deny the factual averments in Paragraph 165 of Plaintiff's Petition.**

166.     Section 1983 of Title 42 provides Plaintiff with a remedy at law and equity for the violation of his federal constitutional rights by persons acting under color of state law.

**ANSWER**:     **The allegations in Paragraph 166 of Plaintiff's Petition state legal conclusions to which no response is required.   To the extent Paragraph 166 includes any factual averments to which a response is required, Defendants deny the factual averments in Paragraph 166 of Plaintiff's Petition.**

WHEREFORE, Plaintiff prays that the Court declare the actions to indefinitely suspend Plaintiff and terminate Plaintiff to be in violation of his constitutional rights; to enjoin Defendant Jackson County, White, Stoll, Trosen, Dumovich and Miller, in their official capacities from further violations; and to reinstate Plaintiff to his position with Jackson County. Plaintiff also prays that the Court award him damages, including punitive damages, against Defendant Jackson County and Defendants White, Stoll, Trosen, Dumovich and Miller, in their individual capacities, and award Plaintiff costs and reasonable attorneys' fees pursuant to 42 U.S.C. § 1988 and pre-judgment and post- judgment interest against all Defendants in all of their capacities, and any other relief the Court deems just and proper.

**ANSWER**:     **The allegations in this unnumbered paragraph are prayers for relief requiring neither an admission nor a denial, but to the extent such prayers in any way imply that Defendants engaged in any wrongful or illegal acts, or that Plaintiff is entitled to the relief he seeks, such implications are expressly denied.**

### COUNT IX:
### Conspiracy to Violate Civil Rights
### (Against All Defendants)

167.     Plaintiff incorporates the above paragraphs by reference.

**ANSWER**:     **Defendants incorporate by reference all previous paragraphs and answers, and those that follow, by reference, as if fully set forth in these allegations and**

**answers.**

168.    On information and belief, Plaintiff alleges that Defendants White, Stoll, Trosen, Dumovich, Miller and Jackson County entered into an agreement among themselves and possibly others to cause Plaintiff to be terminated and to be deprived of his constitutionally protected rights.

**ANSWER**:    **Defendants deny the allegations in Paragraph 168 of Plaintiff's Petition.**

169.    As a result of the agreement among the above-named Defendants to deprive the Plaintiff of his constitutional rights, Plaintiff was suspended and then terminated. Each of the above-named Defendants is liable for the acts of the other(s) in furtherance of this conspiracy.

**ANSWER**:    **Defendants deny the allegations in Paragraph 169 of Plaintiff's Petition.**

WHEREFORE, Plaintiff prays that this Court award him damages, including punitive and actual damages, costs and reasonable attorneys' fees and pre-judgment and post-judgment interest against Defendant Jackson County and against Defendants White, Stoll, Trosen, Dumovich and Miller in their individual capacities, and any other relief the Court deems just and proper.

**ANSWER**:    **The allegations in this unnumbered paragraph are prayers for relief requiring neither an admission nor a denial, but to the extent such prayers in any way imply that Defendants engaged in any wrongful or illegal acts, or that Plaintiff is entitled to the relief he seeks, such implications are expressly denied.**

**General Prayer for Relief**

Plaintiff prays that the Court order all additional legal and equitable relief that the Court deems just and proper.

**ANSWER**:    **The allegations in this unnumbered paragraph are prayers for relief**

requiring neither an admission nor a denial, but to the extent such prayers in any way imply that Defendants engaged in any wrongful or illegal acts, or that Plaintiff is entitled to the relief he seeks, such implications are expressly denied.

## DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury on all issues triable by jury.

**ANSWER**:    Defendants demand a trial by jury on all issues triable by jury.

## GENERAL DENIAL

Defendants deny each and every statement, allegation, and averment contained in Plaintiff's Petition that has not been expressly admitted above.

## DEFENSES

In addition to the defenses and denials set forth above, Defendants assert the following defenses.   Defendants reserve the right to raise any and all counterclaims and additional defenses including, but not limited to, affirmative defenses that may become apparent at any time during the course of this litigation.

1.    Counts I-IX of Plaintiff's Petition fail to state claims against Defendants Frank White, V. Edwin Stoll, Mark Trosen, Dennis Dumovich, or Whitney Miller upon which relief can be granted because Official Immunity bars Plaintiff's claims against the individual Defendants.

2.    Counts I-IX of Plaintiff's Petition fail to state a claim against Defendant Jackson County upon which relief can be granted because Sovereign Immunity bars Plaintiff's claims against Defendant Jackson County.

3.    Plaintiff fails to state a claim upon which relief may be granted against Defendants because Plaintiff's Petition for Damages fails to allege any facts that assert any basis to support a claim under the Missouri Whistleblower Protection Act.

4.      Plaintiff fails to state a claim upon which relief may be granted against Defendants because Plaintiff's Petition for Damages fails to allege any facts that assert any basis to support a claim for breach of contract as Plaintiff did not have an employment contract with Defendant Jackson County, Missouri and was instead an at-will employee of the County.

5.      Plaintiff fails to state a claim upon which relief may be granted against Defendants because Plaintiff's Petition for Damages fails to allege any facts that assert any basis to support a claim for breach of an implied covenant of fair dealing in that Plaintiff did not have an employment contract with Defendant Jackson County, Missouri and was instead an at-will employee of the County.

6.      Plaintiff fails to state a claim upon which relief may be granted against Defendants because Plaintiff's Petition for Damages fails to allege any facts that assert any basis to support a claim for defamation under the Missouri common law in that Defendants neither made any defamatory statements regarding Plaintiff nor caused the publication of the same.

7.      Plaintiff fails to state a claim upon which relief may be granted against Defendants because Plaintiff's Petition for Damages fails to allege any facts that assert any basis to support a claim that Defendants failed to provide Plaintiff documents he was entitled under the Missouri Sunshine Act, and/or otherwise failed to follow any statutory requirements of the Missouri Sunshine Act.

8.      Plaintiff fails to state a claim upon which relief may be granted against Defendants because Plaintiff's Petition for Damages fails to allege any facts that assert any basis to support a claim that Defendants failed to provide Plaintiff Procedural Due Process in that Defendants fully complied with all Constitutional, statutory, and/or County ordinances related to Plaintiff's right to an appeal of his September 2018 budgetary layoff.

9.      Plaintiff fails to state a claim upon which relief may be granted against Defendants because Plaintiff's Petition for Damages fails to allege any facts that assert any basis to support a claim that Defendants failed to provide Plaintiff Substantive Due Process in that Defendants fully complied with all Constitutional, statutory, and/or County ordinances related to Plaintiff's right to an appeal of his September 2018 budgetary layoff.

10.     Plaintiff fails to state a claim upon which relief may be granted against Defendants because Plaintiff's Petition for Damages fails to allege any facts that assert any basis to support a claim that Defendants violated Plaintiff's First Amendment Rights.

11.     Plaintiff fails to state a claim upon which relief may be granted against Defendants because Plaintiff's Petition for Damages fails to allege any facts that assert any basis to support a claim that Defendants engaged in a conspiracy to violate Plaintiff's Civil Rights.

12.     Plaintiff's Petition for Damages should be dismissed because any employment actions taken toward Plaintiff were taken for legitimate, non-retaliatory reasons, in good faith and without malice or reckless disregard for Plaintiff's rights under the statute on which he bases his claim in this action.

13.     Any employment actions taken toward Plaintiff were discretionary in nature and taken in good faith and therefore, Defendants may be protected from liability by the doctrine of official immunity.

14.     Defendant had legitimate business reasons for its decisions, and it would have made the same decisions in the absence of any alleged impermissible motivator.

15.     Defendants acted in good faith toward Plaintiff and in compliance with all legal obligations, including, but not limited to, Defendants' adoption of policies to effectuate the same.

64

16.     To the extent that Plaintiff has suffered compensatory or emotional distress damages, upon information and belief, there are intervening and other causes for such damages other than any actions taken by Defendants.

17.     Defendants did not act with malice or in reckless disregard of the Plaintiff's rights, and therefore Plaintiff is not entitled to punitive damages.

18.     Upon information and belief, Plaintiff has failed to mitigate his damages, if any, by failing to avoid the harm for which he seeks relief.

**WHEREFORE**, Defendants pray that Plaintiff's Petition be dismissed in its entirety, with prejudice, and judgment be entered in favor of Defendants; that Defendants be awarded attorneys' fees, expenses, and costs of suit; and for such other and further relief as the Court deems proper and just.

Respectfully submitted.

**SEYFERTH BLUMENTHAL & HARRIS LLC**

*/s/   Paul D. Seyferth*
Charlie J. Harris, Jr., MO 44115
Paul D. Seyferth, MO 44761
Linda A. Adeniji, MO 69594
4801 Main Street, Suite 310
Kansas City, Missouri 64112
(816) 756-0700 (Telephone)
(816) 756-3700 (Facsimile)
charlie@sbhlaw.com
paul@sbhlaw.com
linda@sbhlaw.com

***Attorneys for Defendants***

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on June 28, 2019, I electronically filed the foregoing with the Clerk of

the Court using the CM/ECF system which sent electronic copies to all counsel of record:

Carrie M. Brous
**Brous Law LLC**
3965 West 83rd Street, #115
Prairie Village, Kansas 66208
913.209.8596
cbrous@brouslaw.com

*Attorney for Plaintiff*

/s/ *Paul D. Seyferth*
*Attorney for Defendants*